**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MAICON MODOLO,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**DAVID WESLING, et al.,**<br><br>**Respondents.** | **Civil Action No.**<br>**26-14411-FDS** |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

This is a habeas petition that concerns a noncitizen's challenge to his detention following the revocation of his release. Petitioner Maicon Modolo is a citizen of Brazil who illegally entered the United States in 2021, was ordered removed, and was released on an order of supervision. He was on supervision for more than five years without apparent incident.

In September 2026, he was arrested and his release was revoked. In revoking his release, the government failed to comply with its own procedural regulations. Because those regulations are intended to provide notice to the arrestee and a meaningful opportunity to be heard, the failure of the government to follow them violated Modolo's right to due process of law. The Court will therefore grant the petition and order Modolo's release and return to supervision.

The Court recognizes that the government may have the authority to re-arrest Modolo, and if the government complies with its regulations before revoking his release, Modolo will likely receive the due process to which he is entitled. Nonetheless, the government cannot simply ignore the law, and if it does, it must live with the consequences. For his part, Modolo

contends that he plans to file a motion to reopen his removal proceedings and stay his removal. The Court cannot, however, base any part of its ruling on that representation. Instead, the Court will issue its ruling based on the circumstances as they now exist, without regard to possible future events. And because the government revoked Modolo's release without complying with the applicable legal requirements, it will be ordered to release him from custody pending further developments.

## I. **Background**

Maicon Modolo is a citizen of Brazil. (Pet. for Writ of Habeas Corpus ["Pet."] ¶ 1, Dkt. No. 1). On or about March 5, 2021, he entered the United States without inspection and was encountered by a border patrol agent shortly thereafter. (*Id.*; Notice & Order of Expedited Removal at 1, Dkt. No. 9-1). The Department of Homeland Security ("DHS") determined that he was inadmissible for lack of a valid entry document under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Notice & Order of Expedited Removal at 1.).

On June 24, 2021, Modolo was released from immigration detention on an Order of Supervision ("OSUP"). (Order of Supervision at 1, Dkt. No. 9-4). The OSUP imposed several conditions on his release and warned him that any violation of those conditions might result in his re-detention. (*Id.* at 1, 3). Nothing in the record before the Court suggests that he violated the conditions of his OSUP during the five years he was on release.

At some point, Modolo expressed a fear of return to Brazil; he "received a credible fear interview, and a negative fear finding was rendered." (Resps.' Opp. to Pet.'s Pet. for Writ of Habeas Corpus ["Opp."] at 1, Dkt. No. 9; *see also* Pet.'s Supp. Memo. in Support of Pet. for Writ of Habeas Corpus & Mot. for Release from Immigration Custody Subject to Reasonable Conditions ["Reply"] at 2, Dkt. No. 12 ("Petitioner accepts Respondents' account of the events at the border as true . . . .")). He requested and received review of DHS's decision by an

Immigration Judge. (Opp. at 1). On June 16, 2026, the IJ affirmed DHS's negative fear finding, and his expedited removal order became final. (Order of the Immigration Judge at 1, Dkt. No. 9-3).[1]

On September 24, 2026, Immigration and Customs Enforcement ("ICE") arrested and detained Modolo in Massachusetts. (Pet. ¶ 25). The parties have provided no record evidence concerning the circumstances of the arrest. That same day, ICE issued Modolo a form notifying him that his OSUP had been revoked. (Notice of Revocation of Release at 1, Dkt. No. 9-5). The form notice specified that his release had been "revoked pursuant to 8 C.F.R. § 241.4(*l*)" because "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." (*Id.*). The form did not specify whether ICE had obtained a travel document, whether it had scheduled his removal, or to which country it sought to remove him; the parts of the form dedicated to those details were left blank. (*See id.*). So, too, was the portion of the form notifying Modolo when his informal interview would take place. (*See id.* at 2). The revocation form was completed by an Assistant Field Office Director. (*Id.*).

Respondents have submitted a document stating that Modolo was provided with an initial informal interview on the day he was detained by ICE. (Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(*l*); 8 C.F.R. § 241.13(i) at 1, Dkt. No. 9-6). That document contains no description of any oral response during the informal interview, and it indicates he did not provide a written statement. (*Id.*).

---

[1] Respondents submit a "Notice and Order of Expedited Removal," Form I-860, in which the bottom half—with sections entitled "Order of Removal" and "Certificate of Service"—is blank. (Notice & Order of Expedited Removal at 1.). Petitioner does not dispute that he was subject to a final order of removal once an IJ affirmed DHS's rejection of his fear claim. (*See* Reply at 2).

At 5:20 p.m. on Friday, September 25, 2026, Modolo filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3). (*See* Pet.). At 9:20 a.m. on Monday, September 28, 2026, the Court entered its standard stay order, directing respondents not to move Modolo out of the District of Massachusetts without at least 72 hours' notice and ordering them to respond to the petition by October 5, 2026. (Order Concerning Stay of Transfer or Removal ¶¶ 2, 4, Dkt. No. 4). Due to an administrative oversight, however, neither the habeas petition nor the Court's stay order were promptly served on the United States Attorney's Office.

On October 2, 2026, ICE transferred Modolo to the Jackson Parish Correctional Center in Louisiana. (Resps.' Resp. to Court Order at 1, Dkt. No. 10). Respondents first learned of the pending petition and stay order on October 6, 2026, when the Court directed them to explain why they had transferred Modolo out of this District without the requisite notice. (*See id.*). The Court convened a status conference on October 9, 2026, at which respondents acknowledged that this Court retains jurisdiction over the habeas petition and agreed not to remove Modolo pending resolution of the petition. Modolo's counsel did not seek his immediate return to Massachusetts, and she represented that she has access to regular communication with him at the Louisiana detention facility.

The petition primarily alleges a Fifth Amendment due process violation—specifically, that Modolo was detained without notice and a meaningful opportunity to contest his re-detention—and seeks his release. (Pet. at 6-8). Respondents oppose the habeas petition on three grounds: (1) that his detention is authorized by 8 U.S.C. § 1231(a)(6); (2) that ICE's revocation of his OSUP complied with its regulations under 8 C.F.R. § 241.4 and § 241.13; and (3) that his re-detention satisfies due process. (Opp. at 3-11). They represent that "ICE intends to remove [Modolo] as soon as this Court allows" and that ICE "has a copy of Petitioner's passport in [its]

possession." (*Id.* at 2; *see also* Dkt. No. 9-7). As permitted by the Court, Modolo filed a reply, in which he reiterated his argument that ICE's revocation of his OSUP violated his due process rights and contends that it violated ICE's regulations. (*See* Reply).[2] The Court held a hearing on the petition on October 21, 2026.

## II. Discussion

The Court has jurisdiction under 28 U.S.C. § 2241 to grant writs of habeas corpus filed by noncitizens held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Respondents do not challenge the Court's jurisdiction.

Noncitizens with final removal orders are subject to mandatory detention for 90 days to effectuate the removal, a period that may be extended based on certain noncompliance by the noncitizen. 8 U.S.C. § 1231(a)(1), (2). If the noncitizen is not removed within the removal period, then "pending removal, [the noncitizen] shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). A noncitizen who is inadmissible under § 1182—as respondents contend Modolo is—"may be detained beyond the removal period" or "released . . . subject to the terms of supervision" set out in § 1231(a)(3). *Id.* § 1231(a)(6).

DHS has adopted regulations governing OSUPs and their revocation. *See* 8 C.F.R. §§ 241.4, .5, .13. As relevant here, specified officials may revoke the release of a noncitizen in Modolo's position if the official determines that (1) "[t]he purposes of release have been served," (2) "[t]he alien violate[d] any condition of release," (3) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or (4) "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."

[2] In his reply, Modolo asserted for the first time that he plans to file a motion to reopen his removal proceedings because he and his spouse are pursuing a Form I-130 Petition for Alien Relative. (Reply at 8). As he acknowledges, however, any such proceeding is not directly relevant to his habeas challenge. (*Id.*).

*Id.* § 241.4(*l*)(2). When DHS revokes a noncitizen's release, the noncitizen must "be notified of the reasons for revocation." *Id.* § 241.4(*l*)(1). The noncitizen must also "be afforded an initial informal interview promptly after his or her return to [DHS] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Those regulations protect the due-process rights of noncitizens. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (explaining that 8 C.F.R. § 241.4(*l*) was "promulgated to protect a fundamental right derived from the Constitution or a federal statute," namely, "the opportunity to be heard" (citation modified)).

The notice submitted by respondents invokes 8 C.F.R. § 241.4(*l*) and specifies, through a checkbox, that ICE was revoking Modolo's OSUP on the ground that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." (Notice of Revocation of Release at 1).[3] The notice provides no additional details. (*See id.* at 1-2). The box labeled, "ICE has obtained a travel document and scheduled your removal to take place no later than ______," is not checked, nor is the blank filled in with a date. (*Id.*). The box labeled, "ICE is seeking a travel document to effect your expedition removal to ______," is not checked, nor is the blank filled in with a country. (*Id.*).

In short, nothing in the revocation notice puts Modolo on notice of the "reasons for revocation," as the regulation requires, and that would permit him to meaningfully contest his revocation during his informal interview. 8 C.F.R. § 241.4(*l*)(1). Although respondents now

---

[3] The Court notes that the form was completed by an Assistant Field Office Director, an official whose authority to revoke release is not explicitly contemplated by the regulation, and there is no indication whether the official made a threshold determination that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to" ICE's Executive Associate Director. *See* 8 C.F.R. § 241.4(*l*)(2); *see also Rombot*, 296 F. Supp. 3d at 387; *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 159-62 (W.D.N.Y. 2025). Modolo does not, however, argue that the Assistant Field Office Director lacked authority to revoke his OSUP or that such an absence of authority is a basis for his release, and therefore the Court need not resolve those issues.

represent that they plan to remove Modolo to Brazil "as soon as this Court permits," there is no indication ICE notified him of those plans when it revoked his OSUP, nearly one month ago. And although respondents now possess his passport, the record does not reveal how or when they obtained that document. The record contains no details about the substance of the informal interview and thus no basis to conclude he had the opportunity to meaningfully contest ICE's determination that it could promptly effectuate his removal. (*See* Dkt. No. 9-6 (showing blank space under form text stating "the alien made the following oral response regarding the reasons for revocation")).

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot*, 296 F. Supp. 3d at 388-89 (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). Where a regulation is "promulgated to protect a fundamental right"—here, procedural due process rights—"and ICE fails to adhere to it, the challenged action is invalid." *Perez-Escobar*, 792 F. Supp. 3d at 226 (citation modified). "The subject regulation undoubtedly implicates [Modolo's] constitutional rights[,] [as] '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty' that the Fifth Amendment protects." *Munagi v. McDonald*, 813 F. Supp. 3d 225, 229 (D. Mass. 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

The law gives ICE significant discretion to revoke the release of noncitizens subject to final orders of removal. But it does not give "ICE a carte blanche to re-incarcerate someone without basic due process protections." *Rombot*, 296 F. Supp. 3d at 389. The "essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (quoting *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir.

2010)). The purpose of notice "is to apprise the affected individual of, and permit adequate preparation for," his opportunity to be heard. *Id.* (quoting *Mard v. Town of Amherst*, 350 F.3d 184, 189 (1st Cir. 2003)).

Here, the "conclusory explanation for revoking [Modolo's] release" on the OSUP revocation form "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention 'informal interview.'" *Id.* (quoting 8 C.F.R. § 241.4(*l*)(1)). ICE's failure to provide him "meaningful notice of the basis for its revocation of his release violated [its] regulation and due process." *Id.* Because ICE violated its own regulations and thereby impaired Modolo's right to due process, the revocation of his OSUP is invalid and his detention is unlawful.

**III. <u>Conclusion</u>**

For the foregoing reasons, the petition for writ of habeas corpus is GRANTED. Respondents shall release petitioner Maicon Modolo no later than 5:00 p.m. local time on October 23, 2026. Respondents shall provide advance notice to petitioner's counsel about the time and location of petitioner's release. Petitioner shall be subject to his prior Order of Supervision upon release. Respondents shall file a status report on or before 5:00 p.m. on October 26, 2026, addressing their compliance with this Order.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: October 22, 2026